**This order is SIGNED.**

**Dated: November 14, 2016**

KEVIN R. ANDERSON
U.S. Bankruptcy Judge



rcc

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **In re:**<br><br>**LAISSA TEREZA CALL and DANIEL JEFF WEBB,**<br><br><br>Debtors. | **Bankruptcy Number: 15-22138**<br><br>**Chapter 7** |
| **RAY KLEIN, INC. dba PROFESSIONAL CREDIT SERVICE, a Washington Corporation,**<br><br>Plaintiff,<br>vs.<br><br>**DANIEL JEFF WEBB, an Individual,**<br><br>Defendant. | Adversary Proceeding No. 15-02119<br><br>Hon. Kevin R. Anderson |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
### PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

The matter before the Court is Ray Klein, Inc. dba Professional Credit Service's ("Plaintiff") Motion for Default Judgment. The Court has heard the arguments of Plaintiff's counsel, heard testimony of witnesses, and received exhibits into evidence as noted on the record. Daniel Jeff Webb, the Defendant, however, did not appear at the hearing or file an objection to the Plaintiff's Motion. The Court has also read the pleadings and has conducted its

own independent investigation of applicable law. The Court is prepared to rule and now issues its findings of fact and conclusions of law. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any of the conclusions of law herein are similarly deemed to be findings of fact, and they shall be equally binding as both.

## I.     JURISDICTION, NOTICE, AND VENUE

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(a) & (b) and 28 U.S.C. § 157(b). The Plaintiff's Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final order. Venue is appropriate in this District under 28 U.S.C. §§ 1408 and 1409, and notice of this hearing was properly given to all parties in interest.

## II.    FINDINGS OF FACT

### Procedural History

1. On March 13, 2015 Daniel Jeff Webb ("Webb") filed a joint voluntary Chapter 7 bankruptcy case with Laissa Tereza Call (Case No. 15-22138).[1]

2. Webb was represented by Leonard J. Carson of Pearson, Butler & Carson, PLLC ("Carson").[2]

3. The deadline to object to the Debtors' discharge or to challenge dischargeability of debts under 11 U.S.C. §§ 523 and 727[3] expired after June 22, 2015.[4]

4. On June 19, 2015, the Plaintiff filed an Adversary Proceeding (the "Complaint") against the Webb. The Plaintiff sought a determination that its debts against Webb were non-dischargeable under §§ 523(a)(2) and 523(a)(6).[5]

---

[1] Chapter 7 Voluntary Petition, Docket No. 1, Case No. 15-22138.
[2] *Id.*
[3] Unless otherwise specified, all subsequent chapter and section references herein are to title 11 of the United States Code.
[4] Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, Docket No. 10, Case No. 15-22138.
[5] Docket No. 1, Adv. No. 15-02119. Unless otherwise specified, all subsequent references to the docket are to the Plaintiff's Adversary Proceeding against Webb, Adv. No. 15-02119.

5. The Plaintiff properly served the Summons and Complaint on Webb and Carson by mail on June 30, 2015.[6]

6. Webb filed an answer to the Complaint ("Answer") on July 28, 2015.[7]

7. A few months later, on January 28, 2016, the Court entered an Order Granting Second Amended Stipulated Motion to Amend Order Governing Scheduling and Preliminary Matters ("Scheduling Order"). The Scheduling Order set a Final Pretrial Conference in the case for May 3, 2016.[8]

8. Before the Final Pretrial Conference was held, Carson filed a Motion to Withdraw as Attorney of Record for Webb ("Motion to Withdraw") on April 29, 2016.[9] The Motion to Withdraw included a signed declaration showing that Webb had expressly consented to Carson's request (the "Defendant's Declaration"). The Defendant's Declaration likewise stated that Webb "acknowledges and certifies that [he] is prepared for trial as scheduled and is eligible to appear pro se at the trial" and "that he [was] aware of any and all upcoming hearings in this matter."

9. On May 2, 2016, the Motion to Withdraw was granted. The order on the Motion to Withdraw stated that "[a] party who fails to file Notice of Substitution of Counsel or Notice of Appearance . . . will be deemed to be proceeding pro se and, may be subject to sanction pursuant to Federal Rules of Civil Procedure 16(f)(1), including but not limited to dismissal or default judgment."[10]

10. The next day, May 3, 2016, the Court held the Final Pretrial Conference. Floyd C. Mattson ("Mattson") appeared telephonically on behalf of the Plaintiff. However, Webb did not

---

[6] Docket Nos. 3, 4.
[7] Docket No. 5.
[8] Docket No. 18.
[9] Docket No. 22.
[10] Docket No. 24.

3

appear at the hearing. The Court rescheduled the Final Pretrial Conference for June 7, 2016 ("Rescheduled Hearing").[11]

11. Two days later, on May 5, 2016 the Court mailed notice of the Rescheduled Hearing to Webb at 10894 S. Weiss Drive, South Jordan, UT 84009-7748.[12]

12. On June 7, 2016, the Court held the Rescheduled Hearing on the Final Pretrial Conference. Mattson appeared telephonically for the Plaintiff; however, Webb did not appear. The Bankruptcy Court's staff reported that Webb had called the Court shortly before the Rescheduled Hearing to indicate he would be unable to attend the hearing. Though Webb had not previously requested permission to appear telephonically, the Court's staff nonetheless attempted to reach Webb by telephone so he could participate at the hearing. However, Webb could not be reached. The Court then took a brief recess and reconvened the hearing at 2:00 p.m., but Webb could still not be contacted. The Court stated it would issue an Order to Show Cause for Webb's failure to appear. The Court also mentioned that it would consider an entry of a default certificate if Webb failed to appear at a subsequent hearing.[13]

13. On June 9, 2016, the Court filed an Order to Appear and Show Cause ("OSC") for Webb. The OSC ordered Webb to appear before the Court on June 28, 2016 at 9:30 a.m. and to show cause why he: (1) failed to appear at both the original and rescheduled hearing on the Final Pretrial Conference set by the Court; and (2) failed to file his own Pretrial Order or otherwise respond to the Plaintiff's Pretrial Order. The OSC also stated that "the Court will consider imposing sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii) for failure to comply with the

---

[11] Docket Text Entry dated 05/03/2016.
[12] Docket No. 27.
[13] Docket Text Entry dated 06/07/2016.

Court's Scheduling Order, including but not limited to, striking [Webb's] answer and/or rendering a judgment by default against . . . [Webb] under Local Rule 7055-1."[14]

14. A few days after the OSC was issued, Webb filed a Motion to Reschedule Hearing. Webb requested that the OSC hearing be moved until after the middle of July because of his work schedule.[15]

15. Despite Webb's request, the Court held the OSC hearing. However, no parties appeared. The Court then rescheduled the OSC hearing for July 26, 2016 at 10:30 a.m. and provided notice to Webb. In addition to the terms in the prior OSC order, the Court ordered Webb to "inform Judge Anderson's Chambers no later than July 21, 2016 at 4:30 p.m." if he could not appear at the rescheduled OSC hearing.[16]

16. On July 26, 2016, the Court held the rescheduled OSC hearing. Mattson appeared telephonically for the Plaintiff. However, once again, Webb did not appear. As a result, the Court sanctioned Webb under Fed. R. Civ. P. 16(f)(1)(A)-(C) and Fed. R. Civ. P. 37(b)(2)(A)(iii) by striking Webb's Answer to the Complaint. The Court also ordered that no later than August 19, 2016, Plaintiff could file a motion for default judgment and set the matter for hearing.[17]

17. On August 16, 2016, the Plaintiff filed a Motion for Default Judgment.[18] Notice of the Motion for Default Judgment and the Hearing on the Motion were mailed to Webb on August 30, 2016.[19]

18. The Court held a hearing on the Plaintiff's Motion for Default Judgment on October 18, 2016 at 9:30 a.m. Mattson appeared on behalf of the Plaintiff; however, Webb did

---

[14] Docket No. 29.
[15] Docket No. 32.
[16] Docket No. 34.
[17] Docket No. 39.
[18] Docket No. 41.
[19] Docket No. 42.

not appear. The Plaintiff called two witnesses at the hearing: 1) David Carleson, who appeared telephonically and 2) Donald Baker who was in the courtroom.[20]

<u>Exhibits Admitted at the Evidentiary Hearing</u>

19. In June 2010, Webb signed a Vessel Purchase and Sale Agreement (the "Agreement") to purchase the vessel SeaTex, described as a 56 Matthews (the "Vessel") from Donald and Sue Baker ("Bakers") for $94,500.[21]

20. The Agreement provided that Webb would make a down payment of $8,950 and thereafter pay $800 a month.[22]

21. The Agreement was secured by a Preferred Marine Mortgage between Seatex Charters II, LLC ("Seatex Charters") and the Bakers on August 19, 2010.[23]

22. Webb was the sole member of Seatex Charters.[24] Webb formed Seatex Charters in 2009.[25] But it was later ended in 2010.[26]

23. On February 10, 2012, a judgment was entered in favor of the Bakers; SeaTex Charters, Inc. against M/Y SeaTex, O.N. 287804, Her Tackle, Apparel, Boats, Appurtenances, in rem; Daniel Jeffrey Web; SeaTex Charters II, LLC, in personam in the U.S. District Court for the Western District of Washington, Case No.: 3-11-CV-05122 (the "Default Judgment").[27]

24. The Default Judgment was in the amount of $165,184.36, plus attorney's fees and expenses in the amount of $14,409, and included the damages assessed by the United States District Court, District of Alaska in its Judgment in Rem of August 9, 2011. The Default

---

[20] Docket Text Entry dated 10/18/2016.
[21] Exh. 2.
[22] *Id.*
[23] Exh. 4.
[24] *Id.*
[25] Exh. 20, Webb's Amended Statement of Financial Affairs filed on June 1, 2015.
[26] *Id.*
[27] Docket No. 1; Exh. 11.

Judgment also allowed interest of 8% to accrue per annum, as determined by the Alaska court from January 5, 2011 until paid in full.[28]

25. On May 11, 2013, Bakers assigned the Default Judgment to the Plaintiff.[29]

26. As of October 10, 2016, the total amount due from the Default Judgment is $270,124.20.[30]

### David Carleson's Testimony

27. David Carleson ("Carleson") has been a yacht broker for 30 years.

28. Carleson testified that he met Webb sometime in 2010 when Webb expressed an interest in purchasing a boat. Carleson later suggested that Webb consider the Vessel.

29. Webb told Carleson that he was interested in the Vessel because he wanted to operate a charter business. Webb also represented that his brother was in the funeral-home business and that he was in the process of obtaining a funeral-home business license as well. Webb also stated that he and his brother had purchased a mortuary business in Tacoma, Washington.

30. Carleson testified that Webb made several representations regarding his financial abilities before he purchased the Vessel, including –

- Webb was a high-level contractor and had performed government repair jobs along the coast with his father.

- Webb worked with an heir to the Kraft Foods business and that he and Mr. Kraft did many contracts together. In fact, the Kraft Foods family had helped Webb purchase a condo at one time.

---

[28] *Id.*
[29] Docket No. 1.
[30] Exh. 18.

7

- Webb was a member of the LDS church and had received their assistance in the past. Webb also represented that he had the backing and "security" of the Mormon Church.

- Webb had a contract with the Neptune Society—an organization involved with conducting funerals at sea.

- Webb planned to operate a charter business with the Vessel out of the Seattle area.

31. Afterwards, Carleson passed along Webb's representations to the Bakers, the owners of the Vessel, before the Agreement was signed.

32. After the Agreement was signed, Carleson testified that he could not locate Webb or the Vessel, and that the Webb had not maintained insurance on the Vessel.

### Donald Baker's Testimony

33. Donald Baker ("Baker") testified that he owned the Vessel when it was sold to Webb.

34. Baker testified that he relied on Carleson's representations that Webb appeared to be a valid purchaser for the Vessel. These representations included –

- Webb had a plan for the Vessel as a member of the Neptune Society;
- Webb had a charter operation in the Seattle and San Juan area to do burials at sea; and
- Webb's wife was a daughter to an heir of the Kraft Foods family, and he had their financial backing.

8

35. After the Agreement was made, Baker said Webb only made three monthly payments, that each payment was late, and that payments ceased after November 2010.[31]

36. Baker further testified that Webb never insured the Vessel even though it was a requirement of the Agreement. In fact, Baker stated that he covered three months of insurance premiums after the Agreement was signed. At one point, Baker received proof of insurance from Webb, but shortly thereafter, Baker received a notice of cancellation from the insurance company because Webb never made the payments.

37. Baker said Webb represented that the Vessel was in Washington around September 2010. However, Baker later learned from another source that Webb had taken the Vessel to Alaska during that period.

38. Baker testified that the U.S. Marshalls later repossessed the Vessel in Alaska in March or April of 2011. Baker discovered that several liens were filed against Vessel for repair work authorized by Webb.

39. Baker stated when he recovered the Vessel from Alaska, it had been completely "trashed." For instance, the diesel-generator had been removed; the batteries had been removed, broken, or damaged; there was extensive water and freezing damage; and about $40,000 in electronic marin equipment had been removed from the Vessel.

40. Baker testified that it took a week to make repairs to enable the Vessel to return to Washington state.

41. Baker sold the Vessel in August 2011.

### III. CONCLUSIONS OF LAW

The Plaintiff seeks a determination that the debt related to the Default Judgment is nondischargeable under §§ 523(a)(2) and 523(a)(6).

---

[31] *See also* Exh. 13.

9

### A. Section 523(a)(2) – False Pretenses, a False Representation, or Actual Fraud

Section 523(a)(2)(A) prevents the discharge of a debt based on three separate causes of action: false pretenses, a false representation, or actual fraud.[32] Each cause of action is distinct with its own set of elements, and the creditor has the burden to establish each of these elements.[33] The Court will outline the elements of each cause of action in the order outlined in Section 523(a)(2)(A).

First, to sustain a claim for false pretenses, a creditor must show that the debtor made "implied misrepresentations intended to create and foster a false impression."[34] "False pretenses can be 'defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor.'"[35]

Second, to sustain a claim for a false representation, a creditor must show, by a preponderance of the evidence, that "[1] [t]he debtor made a false representation; [2] the debtor made the representation with the intent to deceive the creditor; [3] the creditor relied on the representation; [4] the creditor's reliance was reasonable; and [5] the debtor's representation caused the creditor to sustain a loss."[36]

Third, to except a debt from discharge based on actual fraud, "the creditor must show: (a) the debtor committed actual fraud; (b) the debtor obtained money, property, services, or credit by

---

[32] A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.
[33] *In re Sturgeon*, 496 B.R. 215, 222-24 (B.A.P. 10th Cir. 2013).
[34] *See id*. at 223.
[35] *Id*. citing *Stevens v. Antonious* (*In re Antonious*), 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006) (citing *Rezin v. Barr* (*In re Barr*), 194 B.R. 1009, 1019 (Bankr. N.D. Ill. 1996)).
[36] *Fowler Brothers v. Young* (*In re Young*), 91 F.3d 1367, 1373 (10th Cir. 1996).

actual fraud; and (c) the debt arises from actual fraud."[37] Put simply, actual fraud is "anything that counts as 'fraud' and is done with wrongful intent."[38] No misrepresentations, however, are necessary to determine actual fraud or wrongful intent.[39] Wrongful intent can be manifested "when a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right."[40]

### B. Section 523(a)(6) – Willful and Malicious Injury

Turning to the second count in the Complaint, that Webb willfully and maliciously injured the Bakers' property, the Court must look to § 523(a)(6). This section prevents a debtor from discharging a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[41]

To prevail on this claim, a creditor has the burden to prove, by a preponderance of the evidence, that a debtor's act was 1)"willful" and 2)"malicious."[42] Willfulness requires "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury."[43] A plaintiff must therefore prove that the debtor "desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it."[44] The inquiry is subjective, focusing on the state of mind of the debtor.[45]

---

[37] *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 10 (B.A.P 10th Cir. 2016).
[38] *Husky Intern. Elec., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016).
[39] *In re Thompson*, 555 B.R. at 10 (citing *Ritz*, 136 S. Ct. at 1587).
[40] *Id.* at 11 (citing *In re Vickery*, 488 B.R. 680, 690 (quoting *Mellon Bank, N.A. v. Vitanovich* (*In re Vitanovich*), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001))).
[41] Section 523(a)(6).
[42] *See In re Coates*, 519 B.R. 842, 848 (Bankr. D. Utah 2014) (citing *Panalis v. Moore* (*In re Moore*), 357 F.3d 1125, 1129 (10th Cir. 2004)).
[43] *Id.* (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).
[44] *Mitsubishi Motors Credit of Am., Inc. v. Longley* (*In re Longley*), 235 B.R. 651, 657 (10th Cir. BAP 1999) (quoting Restatement (Second) of Torts § 8A (1965)).
[45] *In re Coates*, 519 B.R. at 848 (citations omitted).

11

On the other hand, a finding of maliciousness requires proof that the debtor either intends the resulting injury or intentionally takes action that is substantially certain to cause the injury.[46]. The creditor must establish the intent to do harm, not just an intentional act that leads to injury.[47]

## IV. ANALYSIS

Before visiting the merits of the Plaintiff's case, the Court must review the standards for default judgment under FED. R. BANKR. P. 7055. Under this rule, the Court may conduct a hearing when it needs to "establish the truth of any allegation by evidence."[48] In this case, the factual allegations are considered true. Webb did not challenge Plaintiff's allegations. The Court gave Mr. Webb ample opportunities to appear and defend his interests at several hearings. Despite these invitations, Webb chose not to appear or otherwise participate in the proceedings. As a consequence, the Court sanctioned Webb by striking his Answer to the Complaint. With this background in mind, the Court still has a duty to find that the facts in this case are sufficient to reach the appropriate conclusions of law.[49]

In this case, the Plaintiff has alleged sufficient facts to show by a preponderance of the evidence that Webb obtained the debt on the Vessel under false pretenses, false representation, and actual fraud. The Court bases its decision on the record, exhibits, and testimony provided in this case. The Court was particularly persuaded by the testimony of Carleson, who testified that Webb made several representations about his financial ability to repay the debt with the Bakers. Namely, that Webb had special connections to the Kraft Foods business; that he had the financial backing and support of the LDS church; that he had a business contract with the Neptune

---

[46] *In re Moore*, 357 F.3d 1125, 1129 (10th Cir. 2004).
[47] *Id.* at 1128.
[48] FED. R. BANKR. P. 7055(b)(2)(C).
[49] *See Bixler v. Foster*, 596 F.3d 751, 755 (10th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

12

Society; and that he planned to open his own charter business using the Vessel. The Court finds Carleson's testimony to be credible based on his experience as a yacht broker for at least 30 years and his personal dealings with Webb.

Though Webb never challenged these allegations, the Court finds further support of Webb's false representations concerning his financial abilities in the record. For instance, in the February 2016 deposition, Webb testified that his only experience in the mortuary business had been in 1996 for less than a year.[50] Likewise, in the same deposition, Webb testified that he had "no experience in the charter business when he purchased the [Vessel]."[51] These facts, combined with Carleson's testimony, reveal that Webb knowingly made false representations about his financial ability to make payments on the Vessel.

Furthermore, Webb's false representations were made with the intent to deceive Carleson and the Bakers, and did indeed cause the Bakers to sustain a significant loss to their property. Specifically, after the Vessel was recovered from Webb, the Bakers were only able to sell it for $12,000 because of Webb's removal of items from the Vessel and his failure to properly store and maintain it.[52]

Even if Webb's statements to Carleson were not actual representations of his financial ability to make payments on the debt, Webb's conduct clearly showed he intended to create and foster a false impression when he purchased the Vessel. Webb made this impression to Carleson when he stated that he had the backing of well-known and financially-successful organizations, such as Kraft Foods and the LDS church. Webb also made implied representations that he had legitimate business plans related to the purchase of the Vessel. Specifically, that the Vessel would be used for charter work out of the Seattle area, and that he already had begun efforts to

---

[50] Exh. 19 at p. 17-18.
[51] Exh. 19 at p. 10.
[52] Exh. 17.

obtain a mortuary license. Webb's misleading conduct ultimately induced the Bakers to enter into the Agreement. Thus, for these reasons, Webb's actions rise to the level of false pretenses.

Webb's representations and conduct in this case also rise to the level of actual fraud under § 523(a)(2)(A). As previously discussed, Webb's actions show that he intentionally engaged in a scheme to deprive or cheat the Bakers when he obtained the Vessel. For instance, Webb never obtained insurance on the Vessel, despite this clear term in the Draft Letter of Understanding and the Preferred Marine Mortgage.[53] In fact, Baker testified that he paid for all insurance premiums on the Vessel. Webb stated in email communications with Baker that he planned to obtain insurance and repay Baker for premiums he covered, but Webb never did.[54] At one point, Webb provided Baker with proof of insurance, but Baker later received notice that the insurance was cancelled for non-payment. These actions, along with the conduct discussed earlier, show that Webb intended to commit actual fraud against the Bakers. For all these reasons, the Court finds that the debt is excepted from discharge under § 523(a)(2)(A).

The Court, however, declines to grant a default judgment in favor of the Plaintiff under § 523(a)(6). Plaintiff argues that Webb willfully and maliciously injured the Bakers' property by removing $40,000 in electronics and accessories from the Vessel. Although Plaintiff provided testimony and evidence of the value of these items, such evidence failed to establish that Webb's actions were done with the specific intent to harm the Bakers or their property. The Court is certainly mindful that Webb's actions harmed the Bakers' property, but based on the evidence presented, the Court finds that the Plaintiff has not satisfied its burden to show that Webb's actions were both willful and malicious for purposes of § 523(a)(2)(A).

---

[53] Exh. 1, 4, respectively.
[54] Exh. 14.

## V. CONCLUSION

The Court finds that the obligations owing to Plaintiff, as ordered by the U.S. District Court Case No.: 3:11-CV-05122, are non-dischargeable under § 523(a)(2). The Court finds that the damages related to the non-dischargeable debt total $270,124.20, as outlined in Exhibit 18. However, the Court denies the Plaintiff's request to find that the debt is excepted from discharge under § 523(a)(6). The Court will ask the Plaintiff as the prevailing party to prepare the order of default judgment granting in part and denying in part the Plaintiff's request.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

    Floyd C. Mattson    bmattson@hawesfinancial.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

    Daniel Jeff Webb
    10894 S. Weiss Drive
    South Jordan, UT 84095